UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**MONIQUE L. BEANE**  **CIVIL ACTION NO. 10-0781**

**VS**  **JUDGE MINALDI**

**UTILITY TRAILER**  **MAGISTRATE JUDGE KAY**
**MANUFACTURING CO., ET AL.**

### MEMORANDUM ORDER

On May 10, 2011, a hearing was held on a Motion to Compel filed by the plaintiff [doc. 77], and a corresponding Motion for a Protective Order filed by defendants [doc. 82]. At that hearing we ruled on a majority of the requests put forth by the plaintiff. *See* doc. 88. However, arguments pertaining to plaintiff's requests for production numbers 10, 11, and 27 through 31 were taken under advisement. *Id.* We rule on those requests today.

1. **Request Numbers 10-11**

Having taken the parties' arguments under advisement, we now **GRANT** plaintiffs' motion to compel as to requests for production numbers 10 and 11.

These requests seek information regarding the lobbying efforts of defendants and defendants' employees. Defendants argue that the requests are prohibited by the First Amendment. Doc. 82, att. 1.

In evaluating claims of associational privilege in the discovery context, federal courts apply a burden-shifting analysis. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-16 (9th Cir. 2010). First, the party asserting the privilege must make a *prima facie* showing that the privilege applies by demonstrating an objectively reasonable probability that compelled disclosure will chill associational rights, i.e. that disclosure will deter membership due to fears of threats, harassment

or reprisal from either government officials or private parties which may affect members' physical well-being, political activities, or economic interests. *NAACP v. State of Ala.*, 357 U.S. 449, 462-63 (1958). Utility has not made such a showing. As such, the documents requested are not privileged under the First Amendment. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, No. 08-1967, 2011 WL 1136440, at *4 (W.D. Mo. Mar. 25, 2011) ("[L]obbying efforts are not privileged . . . .").

Defendants also argue that the requests are irrelevant and should be denied for this reason. Plaintiffs argue, on the other hand, that the requests are proper in that they prove that defendants "lobbied extensively to avoid regulation regarding underride protection," which "explain[] why federal regulation was either delayed, or is non-existent, on these issues."

At hearing, plaintiff further expounded on the relevancy issue arguing that, based upon counsel for plaintiff's experience litigating these issues, it is likely that defendants will argue that they did not have proper underride protection because they were not required to do so, i.e. that the federal agency regulating such matters had concluded the underride protection that defendants did have was sufficient. In response plaintiff would likely argue that this proves nothing, as defendants' employees were actively lobbying in efforts to cause lax regulations which resulted in a regulatory system whereby the minimal requirements that defendants did impose did not meet the standard imposed by the Louisiana Products Liability Act.

We find the argument put forth by defendants to be compelling. *See In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94-0897, 1995 WL 509666, at *1 (N.D. Ill. Aug. 18, 1995) ("[C]ourts have recognized that evidence of protected lobbying activity may be used to show the purpose and character of other activities, provided that such evidence is probative and not unduly prejudicial to the defendant.") (citing *United Mine Workers of America v. Pennington,* 381 U.S. 659, 670-71 n.3 (1965)). Although showing that defendants lobbied to avoid federal

regulation of its industry is likely irrelevant to the elements of a claim under the Louisiana Products Liability Act, if, as suggested, defendants put the regulations at issue, defendants' lobbing efforts may well become relevant.

At this juncture, we simply cannot assign a value to the probative nature of the requested documents. Thus, we cannot hold that as a matter of law evidence of lobbying activity can never be relevant to the defense of a Louisiana Products Liability Act claim. *See id.* at \*2. The ultimate relevance of this evidence such that it could be admitted at trial will be a matter for the district judge to determine.

### 2. Request Numbers 27 through 32

We also **GRANT** plaintiff's motion to compel as to requests for production numbers 27 through 31.

These requests seek information regarding defendants' net worth. Plaintiff argues that these requests "go to economic feasibility as well as Utility's ability to study, develop and test appropriate safeguards to prevent injuries such as those at issue here." Doc. 77, p. 12. Defendants, on the other hand, argue that "neither federal nor similar state rules permit the discovery of facts concerning a defendant's financial status as such matters are irrelevant and cannot lead to the discovery of admissible evidence." Doc. 82, att. 1, p. 16 (citing 23 Am. Jur. 2d Depositions and Discovery 38).

Unless obviously relevant to an issue that will be raised in the lawsuit, "a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered." *F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980); *see also generally Resolution Trust Corp. v. Feffer*, 793 F.Supp. 11 (D.D.C. 1992) (same). Here, defendants submit that the financial condition of the defendants is obviously relevant to an issue that will be raised in the lawsuit since the Louisiana Products Liability Act specifically requires that a plaintiff show that an

alternative design was feasible "'in light of . . . then existing economic practicality.'"  Doc. 86, p. 5 (quoting LA. REV. STAT. § 9:2800.59).

We find the argument put forth by the plaintiff to be compelling.  In the end, it would be unfair to allow defendants to introduce evidence that it was economically impractical to use a safer underride, without also allowing plaintiff to rebut this position.  As economic practicality is explicitly mentioned in the statute, we cannot hold that as a matter of law that evidence of financial worth can never be relevant to the defense of a Louisiana Products Liability Act claim.

### *Conclusion*

In light of the forgoing, plaintiff's requests for production numbers 10, 11, and 27 through 31 are **GRANTED**.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on June 21, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE