RECEIVED
IN LAKE CHARLES, LA.

MAR 7 2013

TONY R. MOORE, CLERK
BY _____
            DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MONIQUE BEANE, INDIVIDUALLY AND AS NATURAL TUTOR OF THE MINOR CHILD, J.E.B. | : | DOCKET NO. 2:10 CV 0781 |
| VS. | : | JUDGE MINALDI |
| UTILITY TRAILER MANUFACTURING COMPANY AND TRUCK TRAILER MANUFACTURERS ASSOCIATION | : | MAGISTRATE JUDGE HILL |

## MEMORANDUM ORDER

Before the court is a Motion in Limine [Doc. 325] filed by the plaintiff, Monique Beane, to exclude fourteen (14) different types of evidence. The defendant, Utility Trailer Manufacturing Company ("UTM"), filed a response [Doc. 356]. Beane filed a reply [Doc. 388], but as it was not timely,[1] it will not be considered by the court. For the reasons stated herein, this motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

In this lawsuit, the plaintiff, Monique Beane, claims damages as a result of a May 5, 2009 tractor-trailer accident in which her husband, Robert Beane, was killed when his Suburban collided at a ninety degree angle with a UTM trailer on U.S. Highway 1 in Caddo Parish. The petition alleges that Beane's Suburban struck the side of the UTM trailer, causing his Suburban to travel beneath (a

---

[1] Because the parties filed their Motions in Limine so close to the trial date, the court issued an Order [Doc. 336] expediting responses and replies. Beane's reply was due by February 28, 2013, but was not filed until March 5, 2013.

1

collision the plaintiff describes as a "side underride") the trailer.[2] The crux of the plaintiff's claim is that, because the UTM trailer did not have side underride protection (namely, a side underride guard), it was defective and unreasonably dangerous under the Louisiana Products Liability Act, La. Rev. Stat. § 9.2800.54, *et seq.*[3] UTM now moves to have several categories of evidence excluded from the trial.

## LAW & ANALYSIS

### I. Remarriage/Prospects of Remarriage for a Widow

Beane first moves to exclude from evidence any reference to the jury of Beane's remarriage or prospects of remarriage, including references to her as any other surname other than Beane.

UTM responds that referring to Monique Beane as "Ms. Beane" is untruthful, as Beane married Jerrad Deal on May 26, 2012, and currently lives with Mr. Deal and her minor daughter. It acknowledges that while "evidence of a widow's remarriage is inadmissible for the purpose of mitigating damages, a widow-plaintiff is not allowed to take the stand and lie about her name."

The undersigned finds that, as Beane now goes by the surname Deal, it would be improper for counsel to continue to refer to her as Mrs. Beane at trial. Thus, while Beane's remarriage clearly cannot come in as a way to mitigate damages, counsel may properly refer to Beane by her taken surname. Accordingly, this motion is GRANTED to the limited extent that Beane may be referred to as Mrs. Deal.

### II. Collateral Source Evidence

---

[2] Pl.'s Compl., [Doc. 1-3], at ¶ 3.

[3] On February 2, 2011, this court granted UTM's 12(b)(6) motion and dismissed plaintiff's claims for (1) negligence, (2) punitive damages, and (3) wrongful death damages for plaintiff's personal pain and physical suffering. [Doc. 71]. Accordingly, plaintiff's exclusive theory of liability arises out of the Louisiana Products Liability Act ("LPLA").

Beane next moves to have "collateral source" evidence excluded from trial, including (1) any life insurance collected as a result of the decedent's death; (2) any social security or other benefits paid to Beane or her daughter; (3) any insurance proceeds or other benefits paid to Beane or her daughter or the estate of the decedent; (4) any monies collected for or on behalf of Beane to defray medical costs or funeral burial costs; (5) that any recovery in this case may or may not be subject to federal income tax or other taxation.

UTM notes that it does not oppose the relief requested in this portion of Beane's motion, unless at trial Beane "opens the door" to such evidence.

Accordingly, this portion of the motion is GRANTED.

### III. Other Lawsuit or Claims

Beane moves to exclude evidence of any other lawsuit or claim that may have been filed as a result of this case's accident, or any resolution (or amounts thereof) of any such lawsuit or claim.

UTM counters that Beane is well aware that another lawsuit was filed against the driver of the UTM trailer, his employer, and insurance company in this court, *Beane v. Ladislav, Land Logistics, Inc. and Northland Insurance Company*, docket no. 2:09-cv-02030. UTM acknowledges that any evidence related to sums recovered from that case's subsequent settlement is inadmissible pursuant to the collateral source doctrine, but that Beane provides no case law which allows for the preclusion of evidence related to the mere existence of the *Ladislav* lawsuit. UTM also asserts that evidence of this related lawsuit is highly probative, as Louisiana applies a comparative fault system to tort cases, and that this concept applies to the LPLA. As such, "evidence regarding the fault of all actors is critical in any action in which the jury must conduct a comparative analysis. Here it is critical that plaintiff places blame for this accident with individuals/companies other than UTM, and

acknowledged so by filing a lawsuit which she asserts fault-driven factual allegations against parties absent to these proceedings." Further, UTM notes that the filing of a lawsuit against other parties is considered an evidentiary admission against interest.

Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them. *Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir.1978); *State Farm Mutual Auto Insurance Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968); *Mull v. Ford Motor Co.*, 368 F.2d 713, 716 (2d Cir 1996); *White v. ARCO/Polymers, Inc.* 720 F.2d 1391, 1396 (5th Cir. 1983).

The undersigned will GRANT this motion to the limited extent that evidence of any previous settlement amounts from the *Ladislav* case cannot be introduced to reduce the plaintiff's damages in this case under the collateral source doctrine, but that it is otherwise DENIED as overly broad.

IV.   **Any Evidence of Claims or Allegations not Properly Pled**

Beane later submitted a letter to the court clarifying that it withdrew this portion of its motion because it was inaccurate [Doc. 378]. Thus, this portion of the motion is DENIED as MOOT.

V.   **Evidence Regarding Plaintiff's Expert Witness**

Fifth, Beane moves to exclude evidence that: (1) any of her experts have been a party to any other lawsuit; (2) that any of her experts have had other Daubert or similar challenges against them sustained; (3) that one of her experts, Perry Ponder, had an initial report that has since been supplemented.

UTM counters that evidence that Beane's experts have been party to other lawsuits is admissible because it speaks to the credibility of the experts' opinions, and thus UTM should be free

to cross examine the experts about matters reflecting bias or prejudice, as well as to introduce appropriate extrinsic evidence of bias. UTM notes that Beane does not list any particular suit, or why such evidence is irrelevant, or why it would be unfairly prejudicial, and thus her request is overly broad and, if granted, could preclude the introduction of highly probative evidence (including evidence of the expert's general credibility, bias, prejudice, and character for truthfulness). UTM also argues that there is no reason to exclude reference to or use Ponder's initial report, particularly because in Ponder's supplemental report, he notes that he "stands by, and incorporates, his first report." Thus, by Ponder's own admission, UTM asserts, Ponder's own supplemental report dose not replace his initial report.

Further, while UTM acknowledges that expert reports generally may not come into evidence, as they are inadmissible hearsay, they can still be used to impeach a witness or refresh a witness' recollection.

The undersigned agrees with UTM that Beane's requests are overly broad and, and thus this portion of Beane's motion is DENIED.

## VI. UTM's Evidence Limited to Date of Sale and to Knowledge of UTM

Beane next moves to exclude any evidence from UTM that post-dates the time that the subject trailer left the manufacturer's control, as per the requirements of the LPLA.

UTM counters that in attempting to exclude evidence dated after the product left the manufacturer's control, plaintiff apparently confuses the relevant time period for certain legal issues (e.g., knowledge of the manufacturer) with the time period for evidence that may prove or disprove facts of consequence to those issues (for which the LPLA does not impose a limit). Thus, it does not

follow that evidence generated after the trailer left UTM's control in December 2006 [Doc. 266-5, p. 28] is irrelevant.

UTM cites a Louisiana Second Circuit case[4], in which the court "allowed the parties to prove or disprove the existence of a manufacturing defect under the LPLA through circumstantial evidence which arose after the product left the manufacturer's control." It concludes by suggesting that if the court precludes any and all evidence from after 2006 (when the trailer left UTM's control), then most of the expert analysis, testing, reporting, and testimony pertinent to this case would have to be excluded on both sides.

The undersigned agrees that this request is overly broad, and thus this portion of Beane's motion is DENIED.

VII. **Evidence Inconsistent with UTM's 30(b)(6) Witness**

Beane next argues that any evidence offered by UTM's corporate representative, Jeffrey Bennett, offered during trial that contradicts his prior deposition testimony should be excluded.

UTM counters that in the Fifth Circuit, "statements made by a party, whether an individual or a corporation through its designated representative, 'operate as adverse evidentiary admissions' that may be revised later." *Johnson v. Big Lots Stores, Inc.*, CIV.A. 04-3201, 2008 WL 6928161 (E.D. La. May 2, 2008) (citing *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)).

The undersigned finds that this request is premature: if Bennett contradicts his previous deposition testimony, then Beane may attack this inconsistent testimony via cross examination. Accordingly, this portion of the motion is DENIED as premature.

VIII. **UTM's "Good Deeds"**

---

[4] *Jurls v. Ford Motor Company*, 32,125 (La. App. 2 Cir. 1/6/00), 752 So.2d 260, 265.

Beane next moves to exclude evidence or mention of UTM as a "good citizen" or UTM being involved in charitable or community endeavors.

UTM counters that because Beane is asserting that UTM knowingly refused to use an alternative safe design for its trailers, she has "placed in controversy the issue of UTM's corporate character, and UTM is entitled to present evidence of its good corporate citizenship." Further, it notes that it has not placed into controversy the character of Beane or the decedent, and thus if its good deeds are excluded, then the plaintiff and decedent's good deeds should likewise be excluded.

The undersigned finds that evidence relevant to UTM's corporate character is not relevant to this action. Thus, this portion of the motion is GRANTED.

IX. **Compliance with Discovery Rules**

Beane next moves: (1) to exclude evidence that any party did or did not comply with discovery rules; (2) that UTM be prevented from calling, or attempting to call, any person who was not timely or properly disclosed as a witness; (3) that UTM not mention the probable or anticipated testimony of any such person; (4) that UTM not offer, or attempt to offer, any exhibits not properly or timely listed/disclosed; (5) that UTM not mention the probable or claimed contents of any such exhibits; (5) that, before showing any exhibit or other document/item to either a witness or jury, UTM shall identify and show same to Plaintiffs' counsel; (6) that UTM not mention or comment that any of Plaintiffs' evidence was a surprise or had somehow been withheld from UTM.

UTM counters that such a broad blanket exclusion may preclude the use of critical arguments at trial, particularly because: (1) more discovery violations may be discovered during the course of trial, for which UTM would need to seek immediate redress; (2) preventing the calling of certain witnesses not previously disclosed may preclude impeachment of witnesses and exhibits; (3)

preventing a party from mentioning anticipated or probable testimony would prevent a proffer of evidence; (4) to require an attorney to identify and show every exhibit to Beane's counsel before presentation would interfere with the general flow of impeachment.

The undersigned finds that this request is speculative, premature, and overly broad . As issues arise during trial the court will address them in accordance with its general policies and procedures. Accordingly, this portion of the motion is DENIED.

X. **Reference to the Parties' Counsel**

Beane next moves to exclude any evidence or comment regarding opposing counsel, including the timing or circumstances under which she retained any or all counsel; involvement in political races; the wealth of counsel; that any of the plaintiff's counsel used to be tobacco, asbestos, or union lawyers; and any reference to communications between Beane and her counsel. She also requests exclusion of any good deeds of defense counsel or that the defense counsel is a small or "mom and pop" organization.

UTM notes that "this portion of plaintiff's motion is not an appropriate subject for a motion in limine, but rather relates to Court instructions prior to trial. Further, UTM has no intent to make the comments of concern."

The undersigned agrees that this is not an appropriate request for a motion in limine, but that if this issue arises during trial, it may be properly dealt with through objection. Accordingly, this portion of the motion is DENIED as premature.

XI. **The Shelton Report**

Beane next moves to exclude the Shelton Report, a document prepared by "a Mr. Shelton on retainer by UTM's trade organization (TTMA)." Beane notes that the Shelton report was prepared

for submission to the NHTSA, but was withdrawn due to statistical and mathematical errors (and that this was confirmed by UTM's statistical expert, Jeya Padmanaban). Further, Beane alleges that this report was never subjected to peer review and has never been published. Beane further notes that Mr. Shelton was deposed prior to another side underride trial (*Baker v. Lufkin*), but that following such, his report/testimony was excluded as unreliable. She also asserts that no one at UTM has seen or reviewed this report.

UTM counters that Beane's allegations against the Shelton Report are incorrect. It first explains the history of the Shelton Report, noting that before the Shelton Report, NHTSA conducted crash tests, gathered data on rear underride guards, and collected and published data on the frequency and severity of underride accidents. It also performed a cost/benefit analysis of proposed changes to rear guards, finally concluding that rear underride guards were cost-justified. While NHTSA concluded that rear guards were cost-justified, however, it also found that side underride guards were not cost justified. To come to this conclusion, the TTMA hired Mr. Shelton, the person who had prepared NHTSA's report on rear guards, to objectively evaluate whether proposed sideguards would be cost-justified using the same analytical methods he had used while he was an official at NHTSA. Shelton's report was published, and it is on file in the NHTSA rule making docket on underride as well as in the docket for proposed rule making to address collisions into the sides of tank trailers that transport hazardous materials. TTMA's funding of this project was disclosed in the publication, but it is not funding that determines whether the analytical methods followed by Shelton were reliable. UTM also notes that while Mr. Shelton himself was precluded from testifying in the Baker case, "such a ruling would not constitute precedence for this court."

UTM argues that the Shelton Report is relevant, material, and has a foundation because it

shows the economic practicality/feasibility of side underride guards, as per the requirements of the LPLA. Continuing, UTM asserts that its expert, James Hofstetter, intends to use the Shelton Report to discuss economic feasibility of side underride guards. Concluding, UTM asserts that the Shelton Report is not inadmissible hearsay, as experts may properly rely on "facts or data . . of a type reasonably relied upon by experts in the particular field in forming opinions of the subject." Thus, UTM reasons, Hofstetter's reliance on the Shelton Report would "clearly be the type [of evidence] reasonably relied upon by experts such as Hofstetter in forming opinions on the subject of [economic feasibility]."

This argument has been raised in the Hofstetter Motion in Limine. Therefore, the court will defer ruling on the admissibility of the Shelton Report until the ruling on that motion.

XII. **Preliminary Regulatory Evaluation**

Beane also moves to exclude NHTSA's Notice of Proposed Rule making from 1991 on its ongoing efforts to establish a rear underride guard standard. Beane notes that after four years, the final rule was published, and that "this document . . controls, and by its terms, supersedes the preliminary regulation." Beane speculates that UTM wishes to introduce into evidence a sentence from page 101 of the preliminary report that side underride protection is not cost effective, but that this statement must be excluded because: (1) it was not the result of any analysis or evaluation, but instead was "inserted as part of the political process that makes up the regulatory system; (2) UTM's corporate representative is uncertain whether this statement is or is not supported by any evidence; (3) no one at UTM reviewed the preliminary report; (4) the statement is ambiguous.

UTM counters that while Beane references numerous NHTSA related documents in her exhibit list, she seeks to exclude one statement in a preliminary report simply because it is

contrary/unfavorable to her position. It asserts that the preliminary report is a "comprehensive and detailed 94-page report composed by and with the final approval of [NHTSA]." It also notes that the report is a part of the public record in the rear underride docket for rule making. Continuing, it notes that while Beane argues that the final report controls and supersedes the preliminary report, the preliminary report is the "most recent statement by any US Department of Transportation agency on the feasibility of side underride guards," and thus the final report cannot supersede the preliminary report on this one issue, since the final report *does not mention side underride guards*. UTM asserts that "despite [Beane's] assertion, the statement was the result of extensive analysis and evaluation," including the evaluation of a British report which included statistics on side impact accidents and commented on the feasibility of side underride protection.

The undersigned finds that this evidence is relevant and has a substantial foundation. Thus, Beane's portion of this motion is DENIED.

XIII. **Yorg Sander's Deposition**

UTM notes in its response that this objection is moot because UTM will strike the deposition transcript of Sanders from its exhibit list and he will testify at trial. Thus, the undersigned will DENY this portion of the motion as MOOT.

XIV. **Miscellaneous Matters**

The plaintiff argues that there should be no evidence or testimony concerning the following:
1. That a pro-plaintiff verdict would have an adverse effect on the economy, consumers, UTM, the tractor trailer industry, the general public, or insurance rates.

UTM notes that it has no opposition to this objection, and thus it is GRANTED.

2. That any settlement negotiations have occurred or the content of said negotiations.

UTM notes that it has no opposition to this objection, and thus it is GRANTED.

3. That UTM not request Beane produce any material in her files while in the presence of the jury and that UTM not request that Beane stipulate or agree to any matter in the presence of the jury.

The undersigned finds that this request is premature and overly broad, and thus it is DENIED. The court will address this issue as it arises at trial.

4. That any witness or person has been charged with/convicted of a crime.

Under Fed. R. Evid. 609, a court may allow evidence of prior crimes to attack a witness's character for truthfulness. Thus, this request is DENIED as overly broad.

5. That any person did, or did not, receive a citation as a result of the accident and that any person did, or did not, have any charges filed against him/her as a result of the accident.

Courts may allow this type of evidence to come in as an admission against interest only if there is a court record establishing that the person admitted guilt.

This request is DENIED as overly broad.

6. Any hearsay statements contained within law enforcement files.

This request is overly broad and is thus DENIED.

7. Opinions contained within any law enforcement files on the cause of the accident.

The undersigned conducted a hearing on February 26, 2013, which included a hearing on a Daubert motion for Sargent Gray, who wrote the police report for the subject accident. The undersigned denied the plaintiff's Daubert motion, and thus this request is DENIED.

8. Any comment on Beane's failure to call a witness unless or until UTM can show said witness stood in some special relationship with Beane.

UTM notes that it has no opposition to this objection, and thus it is GRANTED.

Lake Charles, Louisiana, this ____ day of _____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE